# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### AT CINCINNATI

**LILLIE BRATE,**

          **Plaintiff,**

       **v.**                          **Case No. 1:13-cv-5-HJW**

**BELCAN CORPORATION,**

          **Defendant**

## ORDER

Pending is the defendant's "Motion for Summary Judgment" (doc. no. 24), which plaintiff opposes. Defendant has submitted proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. no. 32). The Court held a hearing on June 11, 2014, at which counsel presented oral arguments. Having carefully considered the record, including the parties' briefs, exhibits, proposed findings, oral arguments, and applicable authority, the Court will **grant** the motion for the following reasons:

## I. Background and Procedural History

The following facts are undisputed.[1] Plaintiff Lillie Brate was born in 1938. She began working for Belcan in 1994 (doc. no. 32, ¶ 1, Proposed Findings). She worked for a time as an administrative assistant, and then as a recruiter. In 2002, was promoted to "Team Leader" (also referred to as "Branch Manager" or "Branch Leader") of the staffing office in Fairfield, Ohio (¶ 2). In such position, she was

---

[1] Plaintiff has red-lined as "disputed" various correct facts in the Proposed Findings because she is disputing the legal implications of those facts, not the facts themselves.

eligible to participate in the profit sharing bonus pool, which in some profitable years, entitled her to as much as $75,000.00 in bonus pay. In early 2011, Brate's bonus potential decreased due to the loss of work from a large military contractor while she was managing the Fairfield office (¶ 40). Belcan closed that office on September 30, 2011, and Brate's position as Team Leader ended at that time (¶ 3).[2]

Two months before the office closed, Brate filed an age discrimination lawsuit against her employer (¶ 4; see <u>Brate v. Belcan</u>, S.D. Ohio Case No. 1:11-CV-506, hereinafter "the 2011 lawsuit").[3] In the 2011 suit, Brate complained that her bonuses "were a fraction of what they had been," that "the Fairfield office has not been given new clients," and that she was being replaced by a younger person (doc. no. 1, ¶¶ 25, 29, 40-41, 2011 lawsuit). She alleged that this amounted to age discrimination prohibited by 29 U.S.C § 623(a). The parties and their legal

_____

[2] Brate does not dispute the fact that the Fairfield office closed. She merely urges, based on the testimony of Todd Cross, Belcan's Director of Operations, that the Fairfield office closed "only because its lease was running out." This is not an accurate summation of his testimony. Cross actually testified that they considered closing various offices for various reasons (Cross Dep. at 40-41 "Q. ... why were you considering closing it? A. That office was -- we had two offices within approximately four or five miles of each other. They were too close together, and neither one of them was doing very well financially at the time, and if we combined them together, it would make a lot better financial sense. Q. The other office being Hamilton? A. Correct. Q. Did you also consider closing Hamilton? A. We did."). Cross also noted that the Hamilton office was "newer." In other words, the lease expiration at Fairfield was just one of many factors considered. In any event, the reason for the Fairfield office closure in 2011 is not a "material fact" in the present case. Plaintiff's red-lining creates no genuine dispute of material fact.

[3] The Court takes judicial notice of Brate's 2011 lawsuit, in which she indicated that in January 2010, Belcan "lost some large accounts and had to lay off many of [her con]temporaries. The Fairfield office's hours and revenue dropped to the lowest it had been" under her direction (doc. no. 1, ¶¶ 36-37, 2011 lawsuit).

counsel participated in a settlement conference with Magistrate Judge Bowman (Proposed Findings, ¶ 5). On September 20, 2011, after being advised that the case had settled, this Court (United States District Judge S. Arthur Spiegel presiding) dismissed the case with prejudice. In its Order, the Court expressly retained jurisdiction to enforce the settlement and gave the parties thirty days to "reopen the action if settlement is not consummated" (see doc. no. 6, 2011 lawsuit). On October 5, 2011, the parties memorialized their settlement in a written Confidential Settlement Agreement and Release ("Settlement Agreement"), which included agreed information about Brate's new position as Area Recruiter, her compensation, the geographic area of her assignments, and her new supervisor (Proposed Findings, ¶ 11).[4]

Specifically, the Settlement Agreement provided that Brate would work for Belcan as an "Area Recruiter" from October 1, 2011 through September 30, 2013."[5] It provided that "Brate shall be responsible for recruiting in the Greater Cincinnati, Tri-State (OH, KY, IN) area, which will require ongoing travel throughout Butler, Clermont, Hamilton, Warren, Boone, Campbell, Kenton, and Dearborn counties" and that "Belcan shall reimburse Brate for her business mileage" (Id.). Per their

---

[4] Although plaintiff "red-lines" this proposed finding (¶ 11), it accurately describes the Settlement Agreement in general terms (see doc. no. 21-3). In any event, the Court will rely on the actual document, rather than any description of it. Plaintiff's red-lining creates no genuine dispute of material fact.

[5] Again, although plaintiff "red-lines" this proposed finding (¶ 7), the Settlement Agreement expressly so indicates. At the June 11, 2014 hearing, plaintiff's counsel acknowledged this.

agreement, her salary would remain at $43,368 per year (¶ 12). Although Area Recruiters are typically not entitled to profit sharing, Belcan agreed to make Brate eligible to participate in the profit sharing bonus pool (¶¶ 39-42). No bonus amount was specified or guaranteed (¶ 41).

Brate began her new job on October 1, 2011 (¶ 11). As the Fairfield office had closed, Belcan provided her with a workspace in the Hamilton office (¶ 19). Belcan offered her the office occupied by a previous Team Leader, but Brate declined that office and requested an office in the back because it had a window (¶ 20). Belcan gave Brate the office she requested. Per the Settlement Agreement, Todd Cross supervised Brate and provided her with her "specific job responsibilities and assignments" (¶ 27). He usually communicated with Brate via email (¶¶ 16-17). Brate had no administrative or management duties regarding the Hamilton office (¶ 21). As Area Recruiter, she was responsible for finding temporary employees for customers within the territory set forth in the Settlement Agreement (¶ 15).[6] The Hamilton employees were responsible for all office tasks, including answering the phone and voicemail (Cross Dep. at 115-16). Cross instructed them not to bother Brate with such tasks because Brate had other responsibilities and needed to focus on her own job (Proposed Findings, ¶¶ 16, 23-24).[7] Although it was not her

---

[6] Although Brate red-lines this proposed finding, she acknowledged such fact at deposition (Brate Dep. at 52 "Q: And the job of recruiter, area recruiter, was to find temps in these counties, correct? A. According to this, yes."). Plaintiff's red-lining creates no genuine disputes of material fact.

[7] Brate does not dispute the fact that Cross gave such instructions to the Hamilton employees. She merely speculates about his possible motivation. Mere conjecture

4

job to do so, Brate admits that she wanted to manage the Hamilton office: "I guess I just felt I was still managing. I had done it for so many years" (¶ 25, quoting Brate Dep. at 47).

Although the Settlement Agreement did not obligate Belcan to do so, Belcan provided Brate with a written job description in February of 2012 (¶¶ 27, 45). Belcan asked Brate to travel to Dayton for one day on one occasion (¶ 35).[8] After approximately five months at her new job, Brate took extended FMLA medical leave on February 27, 2012 and never returned to work (¶ 57). She admits she received all the benefits she was entitled to (Brate Dep. at 82 "Q. So you got your benefits that were allowable per Belcan policy, correct? A. I did."). She also acknowledges that she was reimbursed for all her travel on the job. Brate does not dispute that Belcan handled her "leave appropriately, and nothing about the administration of her leave or benefits during the leave is part of her claims" (Proposed Findings, ¶ 58, citing Brate Dep. at 83).

Brate hired new counsel, who entered an appearance in the case on May 17, 2012. Such counsel filed a "Motion to Reopen the Case to Enforce the Settlement," alleging that Belcan had breached the "assignment, bonus, and territory" provisions of the Settlement Agreement (see doc. no. 8, motion in 2011 lawsuit).

---

about motivation creates no genuine dispute of material fact. <u>Peters v. Lincoln Elec. Co.</u>, 285 F.3d 456, 470 (6th Cir. 2002).

[8] Brate acknowledged such fact at deposition (Brate Dep. at 36-37 "Q: You went to Dayton on one occasion, correct? A: I did."). She merely "disputes" the "legal conclusion" that she could be asked to travel to Dayton per the Settlement Agreement.

Specifically, Brate argued that Belcan had breached the contract by assigning her to Dayton for one day, by allegedly "miscalculating" her bonus, and by giving her a job description in February 2012 that (according to Brate) "greatly differed" from her understanding of the responsibilities of an Area Recruiter. In her reply brief, Brate also asserted for the first time that she had been "fraudulently induced" to settle based on Belcan's alleged statement that no "Branch Leader" positions were available (doc. no. 15, reply in 2011 lawsuit). She asked the Court to determine whether the settlement was "valid" but inconsistently sought only specific enforcement rather than rescission. Shortly thereafter, Brate also filed another EEOC charge (doc. no. 21-7 at 2) on June 7, 2012, alleging "age discrimination and retaliation." Brate indicates her new counsel drafted the charge (Brate Dep. at 67). The charge repeated various allegations from her motion to enforce the Settlement Agreement, including that Belcan had "added areas" to her territory and "miscalculated" her bonus.

After full briefing, United States District Judge S. Arthur Spiegel held a hearing on October 2, 2012. He then referred the matter to the Magistrate Judge, who subsequently recommended that Brate had not shown any breach of the Settlement Agreement and that plaintiff's motion should be denied. Plaintiff filed no objections. Upon review, Judge Spiegel found that the Report and Recommendation was "thorough, well-reasoned, and correct" and on December 18, 2012, entered an Order adopting and affirming the report in its entirety (doc. no. 20, 2011 lawsuit).

The EEOC mailed Brate a "Dismissal and Notice of Suit Rights" on October 29, 2012 (doc. no. 21-7). On January 3, 2013, Brate filed a nine-count federal complaint, alleging 1) retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; 2) retaliation under Ohio R.C. § 4112.99; 3) age discrimination under the ADEA; 4) age discrimination under Ohio R.C. § 4112; 5) intentional misrepresentation; 6) negligent misrepresentation; 7) common law fraud; 8) breach of the duty of good faith and fair dealing; and 9) intentional infliction of emotional distress (doc. no. 1, "2013 lawsuit"). Many of the facts and issues alleged as a basis for such claims had already been raised in the plaintiff's motion to enforce the Settlement Agreement.[9]

In her 2013 complaint, Brate alleges that her "bonus potential" had been reduced in 2009-2012 (¶ 19), that Belcan President Leigh Ann Pagnard had represented at the settlement conference that Belcan "had nothing available for [Brate] except an Area Recruiter position" (¶ 26), and that after accepting such position, Brate was "not given an office" and instead was "isolated at the back of the office" (¶¶ 30-31). She alleges that in February of 2012, Belcan gave her a job description that listed duties that "could not possibly be completed by one person" (¶ 46) and that Belcan "added areas" to her territory that were not included in the Settlement Agreement (¶ 50). She complains that Cross and Pagnard made several rude comments to her (¶¶ 32, 38) and that on February 7, 2012, she was assigned to the Dayton office (¶ 49). She alleges that Belcan

---

[9] When plaintiff filed this 2013 lawsuit, she failed to indicate the existence of any "related case" on her cover sheet. The 2011 case is clearly "related."

"promoted a younger woman to be the Area Team Leader" in the downtown office and "hired a younger woman as Team Leader" of a "new" office (¶¶ 42-43). She complains that she "was never offered these positions" (¶ 44). She alleged she "suffers from severe depression, stress, anxiety and hypertension" (¶ 51), that her physician had "placed her on medical leave" (¶ 52), and that her "physician has not yet released her to return to work" (¶ 54).

The parties have completed discovery, and Belcan's motion for summary judgment is fully briefed and ripe for consideration.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

The moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, courts must

distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. <u>Beard v. Banks</u>, 548 U.S. 521, 529 30 (2006). On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>Id</u>. at 248.

## III. Discussion

### A. Res Judicata (Claim Preclusion) and Collateral Estoppel (Issue Preclusion)

While the formation and enforceability of a settlement agreement are covered by state contract law, <u>Bamerilease Capital Corp. v. Nearburg</u>, 958 F.2d 150, 152 (6th Cir.), cert. denied, 506 U.S. 867 (1992), federal law governs whether a party is precluded from relitigating an issue or claim that was previously decided by a federal court in a federal-question case. <u>EB–Gran Prods v. Warner</u>, 242 Fed. Appx. 311, 312 (6th Cir. 2007) (citing <u>Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 324 n. 12 (1971) ("It has been held in non-diversity cases since <u>Erie R. Co. v. Tompkins</u>, that the federal courts will apply their own rule of res judicata."); Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

Although Brate settled her 2011 lawsuit for age discrimination, and although this Court has previously considered and ruled on Brate's motion to enforce the Settlement Agreement, Brate is now attempting in this 2013 lawsuit to reassert many of the same facts, issues, and arguments. Brate "disputes" various matters that have already been litigated in the 2011 lawsuit. For example, Brate alleges that her "bonus potential" was reduced in 2009-2012. Belcan points out that the reduction in bonus was part of the 2011 lawsuit which was settled (doc. no. 24 at 6, 19), that all claims up to the date of settlement were released (Id. at 7), and that the prior claims were fully and finally resolved (Id. at 14-15).

Brate also repeatedly complains that the job description given to her in February 2012 "included more duties than one person could fulfill," that Belcan "added" geographical areas to her territory that were not specified in the Settlement Agreement, and that Belcan "expected more travel" from her than previously agreed (doc. no. 32, Highlighted Proposed Findings, ¶¶ 10, 11, 15, 22, 26, 30-32). This Court previously considered these issues and found no material breach of the Settlement Agreement. Belcan points out that plaintiff is attempting to resurrect settled issues (doc. no. 24 at 19-20), that the Court previously rejected the plaintiff's allegations of a breach of the Settlement Agreement based on the same facts (Id. at 25), and that plaintiff's assignment as Area Recruiter complied with the Settlement Agreement (Id. at 26). Belcan asserts that this 2013 lawsuit is another attempt by Brate "to unwind the Settlement Agreement because she regretted her decision to accept the position of Area Recruiter" (doc. no. 36 at 5).

Of course, it is well-settled that "where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract ... Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement." Smith v. ABN AMRO Mortg. Group Inc., 434 Fed.Appx. 454, 463-64 (6th Cir. 2011), cert. denied, 132 S.Ct. 1799 (2012).

The familiar concepts of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bar the relitigation of claims and issues that have previously been litigated and decided (or that could have been advanced in the previous litigation). Under claim preclusion, a final judgment forecloses "successive litigation of the very same *claim*, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748 (2001); see also, In re Alfes, 709 F.3d 631, 638 (6th Cir. 2013) (holding that a final judgment on the merits precludes the parties from relitigating matters that were or could have been raised in a prior action). For claim preclusion to apply, four elements must be satisfied: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. (Id.).

Issue preclusion bars successive litigation of a fact or legal issue that was "actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." New Hampshire, 532 U.S. at 748–749; Taylor v. Sturgell, 553 U.S. 880, 891 (2008). For

11

issue preclusion to apply, four elements must be satisfied: (1) the precise issue was raised and litigated in the prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding. Ark. Coals, Inc. v. Lawson, 739 F.3d 309, 320-21 (6th Cir. 2014); Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098 (6th Cir. 2012). If a court decides the merits of an issue, a plaintiff may not relitigate that issue in a subsequent suit. Pram Nguyen ex rel. U.S. v. City of Cleveland, 534 Fed.Appx. 445, 452 (6th Cir. 2013). "Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory." Georgia-Pacific, 701 F.3d at 1098.

On the other hand, when allegedly unlawful conduct occurs after a case has been decided, that conduct gives rise to a new cause of action. Lawlor v. Nat'l Screen Service Corp., 349 U.S. 322, 327 (1955). Claim preclusion usually will not prevent the plaintiff from asserting a cause of action that arose after the first suit was decided. Cellar Door Prods., Inc. of Mich. v. Kay, 897 F.2d 1375, 1378 (6th Cir.), cert. denied, 498 U.S. 819 (1990); Pram Nguyen, 534 Fed.Appx. at 452 (observing that if a cause of action did not exist yet, it could not have been brought in the first suit). Nonetheless, when a "defendant continu[es] on the same course of conduct, which has previously been found by a court to be proper, a subsequent court must

conclude that the plaintiff is simply trying to relitigate the same claim." <u>Dubuc v. Green Oak Twp.</u>, 312 F.3d 736, 751 (6th Cir. 2002).

Here, the record reflects that the parties settled the plaintiff's prior age discrimination claim. When Brate moved "to enforce" the settlement, she claimed that Belcan had breached the settlement contract in various ways (i.e., by "adding areas" to her territory, by "miscalculating" her profit-sharing bonus). She alleged that she was being retaliated against post-settlement and that she had been "fraudulently induced" to settle because Belcan had allegedly misrepresented that the Area Recruiter job was the only job available at that time. The Magistrate Judge issued a thorough "Report and Recommendation" specifically rejecting all these assertions and finding that Brate had shown <u>no material breach</u> of the Settlement Agreement. Brate may not relitigate her age discrimination claim from her 2011 suit here, nor may she relitigate previously-decided issues raised by her motion to enforce the Settlement Agreement.

The Magistrate Judge specifically addressed Brate's contentions that Belcan had fraudulently induced her to settle by misrepresenting that only the Area Recruiter job was available and that Belcan had "retaliated" against her during the five months she worked as an Area Recruiter. The Magistrate Judge found no breach due to "no fraudulent inducement" and "no breach based upon plaintiff's new allegation of post-settlement retaliation" (doc. no. 19 at 9, 2011

lawsuit).[10]  The Magistrate Judge recommended that Brate's motion be denied, and Brate filed no objections. Judge Spiegel agreed with the Magistrate Judge's analysis and denied the plaintiff's motion. Brate did not appeal.

Plaintiff's 2011 claims were settled. Plaintiff had a first bite of the apple (settlement of the 2011 lawsuit), a second bite of the apple (the motion to enforce the Settlement Agreement), and to a large extent, is now impermissibly seeking a third bite of the apple (2013 lawsuit). Belcan correctly asserts that Brate may not relitigate her 2011 age discrimination claim (doc. no. 24 at 6 "While Brate repeatedly refers in the Complaint and her deposition to alleged incidents she raised in her 2011 lawsuit, those claims were settled and are not part of this litigation.").

To the extent plaintiff is asserting any "new" claims of age discrimination and retaliation based on post-settlement facts, Brate appears to be basing her claims largely on issues that were raised in her motion to enforce the Settlement Agreement. Judge Spiegel has already ruled on that motion and found no breach of the Settlement Agreement. Plaintiff's arguments for enforcement of the Settlement Agreement are closely related (at times, identical) to her arguments in support of her post-settlement claims of discrimination and retaliation. In any event, the Court will not belabor the preclusion analysis any further. Even assuming that plaintiff may present any "new" (post-settlement) claims here, the evidence reflects no genuine disputes of material fact regarding those claims.

---

[10]  The Magistrate Judge addressed plaintiff's allegations of retaliation but correctly noted that no "retaliation claim" was before the Court (doc. no. 19 at 13).

**B. Summary Judgment Review of 2013 Claims**

     **1. <u>Counts 1 and 2: Alleged Retaliation</u>**

In Count 1, plaintiff alleges retaliation under the ADEA (doc. no. 1, ¶¶ 59-65). In Count 2, she alleges retaliation under Ohio R.C. § 4112.99, which authorizes a cause of action for violation of Ohio's civil rights laws (¶¶ 66-72). The ADEA provides that it shall be unlawful for an employer "to discriminate against any ... employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Similarly, Ohio law provides that "it shall be an unlawful discriminatory practice ... for any employer, because of the ... age ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio R.C. § 4112.02. These claims may be considered together.

To establish a prima facie case of retaliation, Brate must show that: (1) she engaged in protected activity; (2) Belcan knew of the protected activity; (3) Belcan then took an adverse, retaliatory employment action against her, and (4) there was a causal connection between the protected activity and the adverse action. <u>Hunter v. Sec'y of U.S. Army</u>, 565 F.3d 986, 995 (6th Cir. 2009); <u>Imwalle v. Reliance Med. Prods., Inc.</u>, 515 F.3d 531, 544 (6th Cir. 2008). Brate has failed to make out a prima facie case because she has not shown that she suffered any adverse action after

settling her 2011 case and resuming work as an Area Recruiter. She was not fired or demoted, rather, she took extended medical leave on February 27, 2012 and never returned. In the five months Brate worked as Area Recruiter, Belcan never criticized her performance, never issued her any written or verbal warnings, and never expressed any demands or dissatisfaction with her work as an Area Recruiter (Brate Dep. at 72 "Q. You never received any written warning when you were area recruiter, correct? A. No. Q. And Todd Cross never gave you a verbal warning about your performance? A. No"). Brate never returned from medical leave, and her contractual two-year term expired. She was not discharged.

Her remaining complaints are largely trivial and do not amount to "adverse actions." Brate was not forced to take a less desirable office. Although she gave the misleading impression in her complaint that she was deliberately "isolated" in a "back office" by her employer, it is undisputed that she *requested that office* because it had a window. As the evidence refutes her allegation, Brate concedes in the Highlighted Proposed Findings (¶¶ 19-20, 70) that she "is not relying on the location of her office to establish any of her claims."

Brate was not forced to cover "added areas" -- she admits she <u>never</u> went to Lexington, Kentucky, and went to Dayton for only one day. Dayton is within the "Tri-State area" (OH/KY/IN) described in the Settlement Agreement, even if it was not listed as an area that would require "ongoing travel." Belcan points out that it is undisputed that Dayton is actually closer than some of the listed areas for ongoing travel (Proposed Findings, ¶ 36). Brate admitted that she <u>never</u> traveled to

Lexington in her job as Area Recruiter (Brate Dep. at 37; Proposed Finding ¶ 33 "Brate admits she never traveled to Lexington.").

Although she acknowledges that she was never disciplined while working as Area Recruiter, she alleges that Pagnard and Cross made several rude comments to her in late 2011 (doc. no. 1, ¶¶ 32, 38, 2013 case). They deny making any such comments. Belcan points to a lunch date and several emails with Brate as evidence of a cordial working relationship over the following three months. It is undisputed that Brate saw Pagnard only twice after taking over as Area Recruiter and that most of Brate's contact with Cross was via email (Proposed Findings, ¶¶ 16-17, 52). Even assuming that any offensive comments were made during this minimal personal contact, plaintiff has failed to link such comments with any adverse action. The alleged comments were isolated and did not concern any decision to fire, hire, or discipline Brate. The alleged comments are a mere "scintilla" of evidence that is insufficient to withstand summary judgment.

Plaintiff also complains that Cross told Hamilton employees not to bother Brate with administrative tasks like answering phones and checking voicemail. These tasks were *admittedly not part of Brate's job* as Area Recruiter. No reasonable inference of "retaliation" can be drawn from the fact that Cross reasonably expected employees to do their own jobs. See <u>Scott v. Harris</u>, 550 U.S. 372, 381 (2007) (emphasizing that on summary judgment review, a court must draw reasonable inferences in favor of the nonmoving party only "to the extent supportable by the record"). Belcan aptly points out that it "cannot be found to

have retaliated or discriminated against Brate by simply asking her to do the job the parties agreed to at the mediation and in the 10/5/11 Settlement Agreement" (doc. no. 36 at 5). In sum, none of Brate's petty complaints amount to any sort of "adverse action."[11] See <u>Hunter</u>, 565 F.3d at 995 (affirming summary judgment because plaintiff's retaliation claims "were of a de minimus nature and amount to nothing more than petty slights and minor annoyances"). Belcan is entitled to summary judgment on the retaliation claims.

### 2. <u>Counts 3 and 4: Alleged Age Discrimination</u>

Plaintiff also alleges age discrimination under the ADEA (doc. no. 1, ¶¶ 73-78) and Ohio R.C. § 4112 (¶¶ 79-84). The ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The parties agree that the federal and state claims may be considered together (Proposed Findings, ¶ 74).

To establish a prima facie case based on a failure to hire/promote, plaintiff must show: (1) she is over forty; (2) she applied for and was qualified for a job/promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the same time her request for promotion was denied. <u>Warf v. U.S. Dept. of Veterans Affairs</u>, 713 F.3d 874, 879 (6th Cir. 2013). The burden then

---

[11] In fact, plaintiff describes the tasks assigned to other employees as "menial" (2011 lawsuit, doc. no. 15-1 at ¶ 5). This does not amount to "retaliation."

shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Upon doing so, the burden shifts back to the employee to show that the reason is pretext for discrimination. Id. The burden of persuasion remains on plaintiff at all times to demonstrate that age was the "but-for" cause of the employer's adverse action. Gross v. FBL Fin. Servs. Inc., 129 S.Ct. 2343, 2351 n. 4 (2009).

The record does not reflect that Brate's age was ever mentioned when she worked as an Area Recruiter, and Brate proceeds under the burden-shifting framework for cases based on circumstantial evidence. She indicates that she bases her age discrimination claims on the fact that she was not given the Team Leader position at the Middletown branch (doc. no. 32, Proposed Findings, ¶¶ 44, 49; see also, doc. no. 31 at 18-19). Although Brate suggests that Belcan should have offered her this job at the Middleton office while she was Area Recruiter, she acknowledges that she did not apply for such position (Brate Dep. at 67 "Q. Did you ask Todd [Cross] or Leigh Ann [Pagnard] about whether or not that it was true that an office was opening? A. I did not. Q. You didn't inquire about the possibility of being a team leader at that office? A. I did not."). See Anthony v. BTR Auto. Sealing Sys., Inc., 339 F.3d 506, 515 (6th Cir. 2003) (a prima facie case requires that plaintiff actually apply for the position); Thompson v. UHHS Richmond Hts. Hosp., Inc., 372 Fed. Appx. 620, 624 (6th Cir. 2010) (plaintiff did not actually apply for the position). Although Brate complains that "younger" persons -- Jessica Vockell and Kory Steinman -- were "promoted" in 2012, Belcan aptly points out that their

19

positions would have been a demotion for Brate with substantially less pay (doc. no. 36 at 7, fn. 5). Belcan points out that their salaries increased to approximately $35,000 (doc. no. 24 at 21). Steinman worked in the downtown Cincinnati office and was promoted in 2012 to "Manager of Staffing Services" (not "Team Leader" as alleged by Brate). Brate admitted at deposition that she did not even know Vockell's title or responsibilities (Brate Dep. at 62-62). Brate has not pointed to evidence that she was discriminated against (i.e. "treated differently") on such basis.

Even assuming that Brate could meet her prima facie burden, Ms. Pagnard explained that Brate had *agreed* to take the Area Recruiter job and that Belcan management then fully complied with the Settlement Agreement. Brate has not shown that this proffered reason is a "mere pretext." It is undisputed that Belcan continued to employ Brate through the duration of the Settlement Agreement, through September 30, 2013 (Proposed Findings, ¶ 59) and that Belcan held her job open and did not replace Brate's position after her contract ended (¶ 60). It is undisputed that Belcan "never replaced her with someone younger" (Id.). The record is devoid of evidence reflecting any genuine disputes of material fact. Plaintiff's age discrimination claims are subject to summary judgment .

### 3. Counts 5-7: Alleged Misrepresentation and Fraud

Brate also alleges intentional misrepresentation in Count 5 (¶¶ 85-89), negligent misrepresentation in Count 6 (¶¶ 90-94), and fraud in Count 7 (¶¶ 95-100).

Brate acknowledges that her negligent misrepresentation claim should be dismissed and that the remaining fraud and intentional misrepresentation claims are "interchangeable" (doc. no. 31 at 8, fn.2).

Under Ohio law, fraud/misrepresentation claims require proof of the following elements: (1) a representation, or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Whelan v. Vanderwist of Cinc., 2011 WL 6938600, ¶ 37 (Ohio App. 11 Dist.) (quoting Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 169 (1984)); Carpenter v. Scherer-Mt. Ins. Agency, 135 Ohio App.3d 316, 327 (Ohio App. 4 Dist. 1999) (citing Burr v. Bd. of Cty. Commis. of Stark Cty., 23 Ohio St.3d 69, 73 (1986)).[12]

The parties expressly agreed in the Settlement Agreement that Brate would work for two years as an Area Recruiter. She now complains that she "relied on Belcan's misrepresentation that there were only area recruiter positions available" (doc. no. 32, ¶ 10). This argument was previously considered and rejected by this Court when it found no breach of the Settlement Agreement. Additionally, to the

---

[12] "A negligent misrepresentation claim does not lie for omissions: there must be an affirmative false statement." Wright v. State Farm Fire and Casualty Co., 2013 WL 2354048, *3 (S.D.Ohio), aff'd by 2014 WL 627171 (6th Cir. (Ohio)) (citing Martin v. Ohio State Univ. Found., 139 Ohio App.3d 89, 104 (2000)).

extent Brate makes allegations about what was said at the 2011 settlement conference, Civil Local Rule 16.3(c) provides that statements made in settlement negotiations (including statements by parties, counsel, and judicial officers) are confidential and "not admissible to prove liability for or invalidity of a claim." Similarly, Ohio R.C. § 2710.03 provides that mediation communications are privileged and inadmissible as evidence. See, e.g., <u>Nachar v. PNC Bank</u>, 901 F.Supp.2d 1012, 1018 (N.D.Ohio 2012) (holding oral discussions between parties during mediation were privileged and confidential). Plaintiff does not argue for any exception and merely suggests that a jury "could infer that Brate would not have taken the area recruiter position if Belcan had not misrepresented available positions" (doc. no. 32, ¶ 65). Belcan points out that "allowing assumptions of what might have been discussed [at a mediation], in lieu of evidence, does not meet plaintiff's burden of proof" and that "a jury cannot be allowed to assume facts that do not exist" (doc. no. 36 at 7-8). The Sixth Circuit Court of Appeals has repeatedly explained that "a nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence." <u>Lyons v. Metr. Gov. of Nashville and Davidson Cty.</u>, 416 Fed.Appx. 483, 490 (6th Cir. 2011) (quoting <u>Cox v. Ky. DOT</u>, 53 F.3d 146, 150 (6th Cir. 1995)); <u>Laws v. HealthSouth N.Ky. Rehab. Hosp.</u>, 2011 WL 5187320, *26 (E.D.Ky.), aff'd by 508 Fed. Appx. 404 (6th Cir. 2012).

Even if Brate could overcome the procedural obstacles of issue preclusion and settlement confidentiality, the record reflects no genuine disputes of material

fact as to these claims. At deposition, ***<u>Brate admitted that Belcan representatives</u>*** ***<u>made no statement or representation to her that the Area Recruiter position was</u>*** ***<u>the only position available at that time</u>*** (Brate Dep. at 14-17). Brate admitted at deposition that she had no conversations with Cross, Pagnard or anyone at Belcan about other available jobs (Brate Dep. at 14 "Q. . . at the mediation do you recall whether you had any direct conversations with Leigh Ann [Pagnard]? A. I don't recall having any" and at 15 "Q. This was not something that you spoke directly to Leigh Ann Pagnard about? A. No." and at 17 "Q. From the time you found out that the Fairfield office was going to close until you went to that settlement conference that we just talked about in September . . . had you had any conversations with Todd Cross about other jobs for you? A. I don't recall any. Q. Any conversations with Leigh Ann Pagnard from the time you found out Fairfield was closing until we got to the settlement conference? A. I don't recall any at this time. Q. Do you recall with anybody else other than Todd or Leigh Ann? This is before the settlement conference. A. No"). Brate acknowledged that she had no discussions about other jobs prior to the settlement conference (Brate Dep. at 18). Cross and Pagnard both testified at deposition that they were unaware of any other Team Leader positions being open at the time of the mediation (Cross Dep. at 45, 50, 74-84; Pagnard Dep. at 74, 93).

Belcan correctly asserts that there is <u>no evidence</u> of any misrepresentation by Belcan (doc. no. 24 at 11). Belcan points out that evidence of positions that became available in the months and years *after* settlement of the 2011 case does

not establish any element of fraud, intentional misrepresentation, or negligent misrepresentation. Plaintiff has not pointed to any concealment of facts that Belcan had any duty to disclose. Belcan correctly points out that it had no obligation to offer her any position at the mediation (doc. no. 36 at 9). Brate has not pointed to any evidence that Belcan made any promises it had no intention of fulfilling. See <u>Galmish v. Cicchini</u>, 90 Ohio St.3d 22, 29–30 (2000) (plaintiff must prove that she was "fraudulently induced" into entering an agreement by promises that the promising party had no intention of fulfilling). In fact, the evidence indicates the opposite. Belcan followed the Settlement Agreement and fulfilled its contractual terms. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Belcan is entitled to summary judgment on these claims (Counts 5-7).

### 4. <u>Count 8: Alleged Breach of Duty of Good Faith and Fair Dealing</u>

In Count 8, plaintiff alleges "breach of the duty of good faith and fair dealing"(¶¶ 101-106). Defendant aptly points out that while contracts have an implied good faith and fair dealing requirement, Ohio law does not recognize this as a separate cause of action. Plaintiff concedes this (doc. no. 31 at 8, fn.2) and acknowledges that dismissal of this claim is appropriate (doc. no. 32, ¶¶ 80-81). Plaintiff has already litigated the alleged "breach" of the Settlement Agreement.

### 5. <u>Count 9: Alleged Intentional Infliction of Emotional Distress</u>

Finally, Brate asserts a claim of "intentional infliction of emotional distress" (doc. no. 1, ¶¶ 107-116). A plaintiff must prove four elements: 1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) the actor's conduct was so extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered utterly intolerable in a civilized community; 3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and 4) the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person can be expected to endure it. <u>Miller v. Currie</u>, 50 F.3d 373, 377 (6th Cir. 1995).

Belcan asserts that Brate has not alleged or pointed to any evidence of "extreme and outrageous" behavior. Brate relies largely on her own allegation that Cross and Pagnard made several offensive comments to her. They deny making any such comments and point to the professional and friendly tone of their contemporaneous emails. Even assuming for purposes of summary judgment that such comments were actually made, they do not rise to the "extreme and outrageous" level necessary to state an actionable claim of intentional infliction of emotional distress under Ohio law. See <u>Hanly v. Riverside Methodist Hosp.</u>, 78 Ohio App.3d 73, 82 (1991) (the alleged conduct must be "extreme and outrageous"); <u>Sinclair v. Donovan</u>, 2011 WL 5326093, *11 (S.D.Ohio) ("without an allegation of conduct that, as a matter of law, is extreme and outrageous, plaintiff's claim must be dismissed"). It is not enough that a defendant intended to inflict

25

emotional distress or even that his conduct has been characterized by malice. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Yeager v. Local Union 20</u>, 6 Ohio St.3d 369, 374-75 (1983), abrogated by, <u>Welling v. Weinfeld</u>, 113 Ohio St.3d 464 (2007). "Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" <u>Id</u>. (quoting from Restatement of the Law 2d, Torts 2d, § 46, and comment (d), as adopted by the Ohio Supreme Court); <u>Alahverdian v. Grebinski</u>, 2014 WL 2048190, *15 (S.D.Ohio) ("It is the rare case that reaches the very high bar of showing 'extreme and outrageous' conduct."). Summary judgment is appropriate here.

<u>IV. Conclusion</u>

Plaintiff has improperly attempted to reassert various *issues* that the Court has previously ruled on and that are precluded from relitigation here. Even assuming that plaintiff has asserted new *claims* (based on post-settlement conduct) that are not barred, and viewing the evidence (and any reasonable inferences) in the light most favorable to plaintiff for purposes of summary judgment, there are simply no genuine disputes of material fact in this case for a jury to determine. Belcan is entitled to summary judgment.

Accordingly, the defendant' "Motion for Summary Judgment" (doc. no. 24) is **GRANTED**; this case is DISMISSED with prejudice at plaintiff's costs and TERMINATED from the docket of this Court.

IT IS SO ORDERED.

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court
